CATHY J. FITZPATRICK
295 29th St Unit 711
Oakland, CA, 94611-5756
Phone: (650) 669-7308
Email: CATHY@CATHYJF.COM

*Plaintiff, appearing in person*

FILED

FEB 24 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

(13)
Fee Paid

# UNITED STATES DISTRICT COURT
## DISTRICT OF NORTHERN CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| CATHY J. FITZPATRICK, an individual, | Case No.: CV 25-1918 DMR |
| Plaintiff, | **COMPLAINT** |
| vs. | 1. Unpaid tax refund for 2020 |
| | 2. Illegal confiscation of 2023 tax refund |
| THE UNITED STATES and | 3. Illegal confiscation of 2024 tax refund |
| THE SECRETARY OF THE TREASURY, | 4. Permanent injunction |
| | 5. Declaratory judgment |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiff states:

1. Plaintiff Cathy J. Fitzpatrick ("Fitzpatrick") is an individual taxpayer who resides in Oakland, California. This case concerns federal income taxes.

### Jurisdiction

2. The court has jurisdiction over all Defendants and over the subject-matter as follows:

(a) <u>Jurisdiction over, and waiver of sovereign immunity by, the United States</u>. There are two possible interpretations of Plaintiff's claims for monetary relief. The jurisdictional basis differs depending on which interpretation is correct. If Plaintiff's monetary claims against the United States are viewed as seeking the recovery of internal revenue taxes alleged to have been illegally assessed

- 1 -
Complaint

or collected, then this court has jurisdiction over the United States under 26 U.S.C. § 7422(a) and 28 U.S.C. § 1346(a)(1). Alternatively, if Plaintiff's claims for monetary relief are construed as seeking the recovery of illegal exactions, jurisdiction over the United States is given by 28 U.S.C. § 1346(a)(2) because the claims are founded upon Acts of Congress (such as 26 U.S.C. § 6402(a)) and the claims do not exceed $10,000 in amount.

(b) <u>Jurisdiction over, and waiver of sovereign immunity on behalf of, the Secretary of the Treasury</u>. Pursuant to 26 U.S.C. § 6213(a), this court has jurisdiction to enjoin the Secretary from making and prosecuting certain illegal tax assessments. The Secretary may be sued under his official title rather than under the name of the current Secretary. Fed. R. Civ. P. 17(d).

(c) <u>Subject-matter jurisdiction</u>. To the extent that the previously-mentioned statutes do not supply a sufficient jurisdictional basis for the claims, this court also has subject-matter jurisdiction over all of Plaintiff's claims under 28 U.S.C. § 1340 because all of the claims arise under the Internal Revenue Code, Title 26 of the United States Code.

(d) <u>Additional jurisdictional allegations</u>. If necessary, Plaintiff also relies upon all of the remaining allegations in this complaint to assist in establishing jurisdiction.

**Venue**

3. <u>Judicial District</u>. Venue is proper in the Northern District of California because Plaintiff resides in this judicial district. *See* 28 U.S.C. § 1402(a).

4. <u>Divisional Assignment</u>. The Clerk must assign civil actions pursuant to the court's Assignment Plan (General Order No. 44). *See* Civil L.R. 3.2(b). According to ¶ 3 of section D of the Assignment Plan, venue for this federal tax lawsuit is proper "in any courthouse in this District".

**Factual Allegations**

5. Plaintiff is a calendar year taxpayer, meaning that Plaintiff's taxable years coincide precisely with calendar years. Thus, for example, a reference to the 2020 taxable year means the taxable year beginning on January 1, 2020 and ending on December 31, 2020.

Allegations Regarding the 2020 Taxable Year

6. Plaintiff timely filed her federal income tax return on Form 1040 for the year 2020 on or before April 15, 2021. This 2020 return showed a total tax of $113,924. Of this total tax, Plaintiff

paid $48,597 through withholdings from her wages during 2020. Plaintiff paid the remaining $65,327 by an electronic payment to the Internal Revenue Service ("IRS")[1] on or before April 12, 2021. Thus, Plaintiff timely paid her entire tax liability for 2020.

7. On or about March 31, 2023, Plaintiff filed an amended tax return for the year 2020 on Form 1040-X. On the Form 1040-X, Plaintiff requested exactly one change to her 2020 return: specifically, Plaintiff requested that the foreign tax credit shown on her 2020 return be changed from $818 to $842. Based on this amendment, Plaintiff requested a refund of $24. The Form 1040-X did not request or contemplate any other changes to Plaintiff's 2020 tax return.

8. On or about April 1, 2024, Plaintiff received a Form CP22A from the IRS dated November 27, 2013 and sent by ordinary mail. This Form CP22A stated: "We made the changes you requested to your 2020 Form 1040 to adjust your tax credits. As a result, you owe $2,768.84."

9. The only lawful assessment that the IRS ever made for Plaintiff's 2020 taxable year was the original assessment of $113,924 when Plaintiff originally filed her 2020 tax return on or before April 15, 2021. This original assessment was authorized by 26 U.S.C. § 6201. As mentioned, Plaintiff fully paid this lawfully-assessed tax before April 15, 2021.

10. Although the IRS sent Plaintiff the Form CP22A dated November 27, 2013, in which the IRS vaguely suggested that Plaintiff supposedly owed the amount of $2,768.84 for the 2020 taxable year, the IRS never determined, proposed, or assessed any alleged deficiency for this amount or for any other amount.

11. If the IRS did purport to assess a deficiency for 2020, the assessment was invalid and void and without any legal effect because 26 U.S.C. § 6213(a) prohibits the IRS from assessing a deficiency without first sending the taxpayer a notice of deficiency by registered or certified mail

---

[1] The IRS is an agency whose officers and employees, notably including the Commissioner of Internal Revenue, are charged with exercising many of the statutory powers and duties that the Internal Revenue Code confers upon the Secretary of the Treasury. *See generally* Treasury Order No. 150-10 (issued April 22, 1982; edited February 1, 2021). Throughout this complaint, Plaintiff attributes actions to the "IRS" whenever the identity of the specific person who took the action on behalf of the Secretary is unknown or unimportant or both.

and then waiting for 90 days.[2] Here, the IRS never sent any notice of deficiency by registered or certified mail (or by any other method).[3] Indeed, Plaintiff still has no idea why the IRS seems to think that additional money is or was owed for 2020 beyond the $113,924 in tax shown on Plaintiff's original 2020 tax return, which Plaintiff paid before April 15, 2021.

12. The statute of limitations for assessment for Plaintiff's 2020 tax year closed on April 15, 2024. *See* 26 U.S.C. § 6501(a). The only lawful assessment ever made prior to that date was the original assessment for $113,924, which had been fully paid for years. Thus, when the statute of limitations closed on April 15, 2024, no remaining liability existed for the 2020 tax year, and no liability for 2020 can ever exist in the future.[4]

### Allegations Regarding the 2023 Taxable Year

13. On or about June 12, 2024, Plaintiff filed her federal tax return on Form 1040 for the 2023 taxable year. This 2023 tax return included a claim for a refund of $742.[5]

---

[2] The prohibition on assessment of deficiency without first sending a notice of deficiency by registered or certified mail and then waiting 90 days is subject to certain very narrow exceptions, *see generally* 26 U.S.C. § 6213(b), but none of those exceptions are implicated in this case.

[3] The Form CP22A that the IRS sent to Plaintiff does not constitute a notice of deficiency within the meaning of 26 U.S.C. § 6212(a). A "deficiency" exists when the tax imposed by law exceeds the tax shown on the taxpayer's return. 26 U.S.C. § 6211(a). A notice of deficiency must notify the taxpayer that the Secretary has "determined" the existence of a deficiency. 26 U.S.C. § 6212(a). Here, however, the Form CP22A states that the IRS merely implemented the changes purportedly "requested" by Plaintiff as shown on Plaintiff's own amended tax return. The Form CP22A suggests that a balance may be owed, but it does not state or even hint that that balance is the result of a deficiency determined by the Secretary.
  At minimum, a notice of deficiency must "(1) advise the taxpayer that the Commissioner has, in fact, determined a deficiency, and (2) specify the year and the amount of the deficiency". *Abrams v. Commissioner*, 84 T.C. 1308, 1310 (1985), aff'd 814 F.2d 1356 (9th Cir. 1987). The Form CP22A in this case does not do either.
  The IRS itself has argued, and the Tax Court has agreed, that a Form CP22A is not a notice of deficiency. *Black v. Commissioner*, No. 19564-22, 2023 U.S. Tax Ct. LEXIS 1993, at *4 (T.C. Apr. 24, 2023) ("[I]t is clear that the Notice CP22A ... does not constitute a notice of deficiency. It does not state that it is a notice of deficiency, nor does it state that any determination has been made... Moreover, the Notice CP22A does not bear any indication that [the IRS] intended the document to be a notice of deficiency.") (citation to *Abrams* omitted).

[4] In certain unusual circumstances, the IRS may assess a deficiency after the close of the regular limitations period, *see generally* 26 U.S.C. § 6501(c), but none of those unusual circumstances are present in this case.

[5] A claim for a refund of income tax may be made on Form 1040. *See* 26 C.F.R. 301.6402-3(a)(1).

14. By notice dated July 8, 2024, the IRS seemingly indicated that Plaintiff's claim for a refund of $742 for 2023 was allowed. However, the IRS refused to actually pay any portion of the refund to Plaintiff. The IRS justified this refusal by asserting that it had applied the 2023 refund to an alleged 2020 tax liability. As discussed, however, Plaintiff did not have any outstanding 2020 tax liability at this time and, indeed, because the statute of limitations for 2020 had already closed by this time, it was too late for the government to invent any new theories of tax liability for 2020.

15. Because Plaintiff did not actually have any 2020 tax liability at the time that the IRS purported to apply the $742 to the nonexistent 2020 tax liability, the result is that the IRS effectively confiscated $742 of Plaintiff's property, contrary to law. Or, an alternative interpretation of the IRS's actions is that the IRS actually denied Plaintiff's request for a refund of $742 for the 2023 taxable year, even though the IRS stated that it had allowed the refund.

<u>Allegations Regarding the 2024 Taxable Year</u>

16. On or about February 13, 2025, Plaintiff filed her federal tax return on Form 1040 for the 2024 taxable year. This 2024 tax return included a claim for a refund of $3,240.

17. On or about February 21, 2025, the IRS seemingly indicated that Plaintiff's claim for a refund of $3,240 for 2024 was allowed. However, the IRS actually paid only $753.02 of the $3,240 refund to Plaintiff. The IRS justified its choice to pay only a portion of the seemingly-allowed 2024 refund to Plaintiff by asserting that the IRS had applied $2,496.98 of the 2024 refund to an alleged 2020 tax liability. As discussed, however, Plaintiff did not have any outstanding 2020 tax liability at this time and, indeed, because the statute of limitations for 2020 had already closed by this time, it was too late for the government to invent any new theories of tax liability for 2020.

18. Because Plaintiff did not actually have any 2020 tax liability at the time that the IRS purported to apply the $2,496.98 to the nonexistent 2020 tax liability, the result is that the IRS effectively confiscated $2,496.98 of Plaintiff's property, contrary to law. Or, an alternative interpretation of the IRS's actions is that the IRS actually denied in part Plaintiff's request for a refund of $3,240 for the 2024 taxable year (specifically, the IRS may have allowed only $753.02 of the requested refund), even though the IRS stated that it had allowed the entire refund of $3,240.

### First Cause of Action

### Tax refund of $24 for 2020

### (against the United States)

19. Plaintiff realleges and incorporates herein all of the allegations of the preceding paragraphs.

20. On or about March 31, 2023, Plaintiff timely filed with the IRS a request for a refund of $24 in respect of her 2020 taxable year. The refund request was made on Form 1040-X (the "2020 Refund Claim").

21. The IRS has not allowed the requested refund of $24 and has not sent a notice of disallowance by certified or registered mail (or by any other method).

22. The 2020 Refund Claim showed that Plaintiff is entitled to a refund of $24 for 2020 by virtue of Plaintiff carrying back $24 of unused foreign tax credits from 2021 to 2020 pursuant to 26 U.S.C. § 904(c).

23. Plaintiff does not owe any outstanding tax liability in respect of any taxable year.

24. Plaintiff is entitled to a refund of $24 plus interest for the 2020 taxable year under this First Cause of Action.

### Second Cause of Action

### Illegal confiscation of all of Plaintiff's $742 tax refund for 2023

### (against the United States)

25. Plaintiff realleges and incorporates herein all of the allegations of the preceding paragraphs.

26. As described earlier, the IRS indicated that it allowed a tax refund of $742 for Plaintiff's 2023 taxable year, but then it refused to pay any portion of that refund to Plaintiff because the IRS purportedly applied the refund to a nonexistent 2020 tax liability.

27. The actions of the IRS in relation to the 2023 refund are susceptible to two possible interpretations: either (1) the IRS allowed the refund and then confiscated it, or (2) the IRS actually denied the refund despite purporting to allow the refund.

28. If the IRS allowed the refund and then confiscated it, this violated 26 U.S.C. § 6402(a), which requires the IRS to pay refunds to taxpayers, subject only to specific offsets authorized by statute. Notably, the IRS may "within the applicable period of limitations" credit a refund to "any

liability in respect of an internal revenue tax". 26 U.S.C. § 6402(a). Here, however, the government's purported application of the 2023 refund to the 2020 taxable year is unauthorized by law for at least two reasons: first, no "liability" existed in respect of the 2020 taxable year at the time of the purported credit; and second, the "applicable period of limitations" for assessment for 2020 had already closed, so it was too late for the IRS to invent any new theories of tax liability for 2020. Hence, the government has no legal basis for retaining the 2023 refund that the IRS purportedly allowed. The amount of $742 constitutes an illegal exaction that the Plaintiff is entitled to recover pursuant to the Little Tucker Act, 28 U.S.C. § 1346(a)(2).[6]

29. As mentioned, an alternative interpretation is that the IRS actually denied Plaintiff's claim for a refund of $742 for 2023, even though the IRS purported to allow the refund. Plaintiff adequately exhausted administrative remedies by filing a timely and detailed request for a refund of $742 on her Form 1040 for 2023. No lawful basis existed for the IRS to reduce Plaintiff's requested 2023 refund by the alleged amount of a nonexistent statute-barred 2020 tax liability. A suit to challenge the denial of the refund may be brought as soon as the IRS "renders a decision" on the administrative claim, 26 U.S.C. § 6532(a), which has already occurred here.[7] Further, Plaintiff has fully paid all taxes owed for all taxable years, and an overpayment of $742 exists for 2023. Therefore, under this theory, Plaintiff is entitled to a tax refund of $742 for 2023 pursuant to 26 U.S.C. § 7422(a).[8]

---

[6] Section 6402(g) of the Internal Revenue Code suggests that a suit against the United States to recover an illegal offset is not "a suit for refund of tax", 26 U.S.C. § 6402(g). The same statute also divests courts of jurisdiction to entertain claims to "restrain or review" certain offsets of tax refunds, namely, any offsets "authorized by subsection (c), (d), (e), or (f)" of 26 U.S.C. § 6402. *Id.* However, the divestment of jurisdiction does not apply to this case because the IRS in this case did not act under subsection (c), (d), (e), or (f) of 26 U.S.C. § 6402, but instead the IRS appears to have purported to act under color of subsection (a) of 26 U.S.C. § 6402. Accordingly, because 26 U.S.C. § 6402(g) does not technically apply to this case, its language merely suggests, rather than commands, that this cause of action is not a suit for refund of tax.

[7] The IRS never mailed a notice of disallowance for any tax year by certified or registered mail, and Plaintiff never waived this requirement, so there is no deadline for asserting this cause of action in court. *See* 26 U.S.C. § 6532(a)(1).

[8] According to 26 U.S.C. § 7422(d), the credit of an overpayment "in satisfaction of any tax liability" may be treated as a payment in respect of the tax liability to which the overpayment was credited. However, this provision has no application to this case because (1) no tax liability actually existed in respect of 2020; (2) an overpayment cannot "satisf[y]" a purported tax liability that does

30. Regardless of which theory is correct, Plaintiff is entitled to $742 plus interest under this Second Cause of Action.

### Third Cause of Action

### Illegal confiscation of $2,496.98 of Plaintiff's $3,240 tax refund for 2024

### (against the United States)

31. Plaintiff realleges and incorporates herein all of the allegations of the preceding paragraphs.

32. As described earlier, the IRS indicated that it allowed a tax refund of $3,240 for Plaintiff's 2024 taxable year, but then it paid only $743.02 of that refund to Plaintiff because the IRS purportedly applied the remainder of the refund to a nonexistent 2020 tax liability.

33. The actions of the IRS in relation to the 2024 refund are susceptible to two possible interpretations: either (1) the IRS allowed the refund in full and then confiscated most of it, or (2) the IRS actually denied the refund in part despite purporting to allow the refund in full.

34. If the IRS allowed the refund in full and then confiscated most of it, this violated 26 U.S.C. § 6402(a), which requires the IRS to pay refunds to taxpayers, subject only to specific offsets authorized by statute. Notably, the IRS may "within the applicable period of limitations" credit a refund to "any liability in respect of an internal revenue tax". 26 U.S.C. § 6402(a). Here, however, the government's purported application of $2,496.98 of the 2024 refund to the 2020 taxable year is unauthorized by law for at least two reasons: first, no "liability" existed in respect of the 2020 taxable year at the time of the purported credit; and second, the "applicable period of limitations" for assessment for 2020 had already closed, so it was too late for the IRS to invent any new theories of tax liability for 2020. Hence, the government has no legal basis for retaining $2,496.98 of the 2024 refund that the IRS purportedly allowed. The amount of $2,496.98 constitutes an illegal exaction that the Plaintiff is entitled to recover pursuant to the Little Tucker Act, 28 U.S.C. § 1346(a)(2).

---

not actually exist; and (3) assessment of any further liability for 2020 was and is time-barred by statute. Therefore, the overpayment of $742 is properly viewed as an overpayment of a 2023 tax liability rather than an as an overpayment of a nonexistent statute-barred 2020 tax liability.

35. As mentioned, an alternative interpretation is that the IRS actually denied in part Plaintiff's claim for a refund of $3,240 for 2024, even though the IRS purported to allow the refund in full. Plaintiff adequately exhausted administrative remedies by filing a timely and detailed request for a refund of $3,240 on her Form 1040 for 2024. No lawful basis existed for the IRS to reduce Plaintiff's requested 2024 refund by the alleged amount of a nonexistent statute-barred 2020 tax liability. A suit to challenge the denial of the refund may be brought as soon as the IRS "renders a decision" on the administrative claim, 26 U.S.C. § 6532(a), which has already occurred here. Further, Plaintiff has fully paid all taxes owed for all taxable years, and an overpayment of $2,496.98 exists for 2024. Therefore, under this theory, Plaintiff is entitled to a tax refund of $2,496.98 for 2024 pursuant to 26 U.S.C. § 7422(a).

36. Regardless of which theory is correct, Plaintiff is entitled to $2,496.98 plus interest under this Third Cause of Action.

### Fourth Cause of Action

### Injunctive relief pursuant to 26 U.S.C. § 6213(a)

### (against the Secretary of the Treasury)

37. Plaintiff realleges and incorporates herein all of the allegations of the preceding paragraphs.

38. In most cases, the Anti-Injunction Act prohibits courts from enjoining the assessment or collection of any tax. 26 U.S.C. § 7421(a). However, the Anti-Injunction Act is subject to certain exceptions. One of those exceptions applies in this case.

39. According to 26 U.S.C. § 6213(a), no assessment of a deficiency in respect of any tax "shall be made, begun, or prosecuted" until after a notice of deficiency has been sent to the taxpayer by certified or registered mail and after 90 days have passed from the mailing of such notice. Further, "the making of such assessment ... during the time such prohibition is in force may be enjoined by a proceeding in the proper court". *Id.*

40. In the case at bar, the Secretary of the Treasury and his agents have already illegally confiscated at least two of Plaintiff's tax refunds for the purpose of unlawfully applying them to a nonexistent tax liability in respect of which no valid assessment of a deficiency has ever existed and can never exist because the statute of limitations has closed. The Secretary of the Treasury and his

agents are likely to persist in this illegal conduct unless enjoined, and no remedy is available at law other than filing a new civil action for each and every taxable year that the government illegally confiscates a refund to apply it to a nonexistent statute-barred tax liability. Plaintiff should not be required to file a new civil action each year.

41. Accordingly, the court should enter a permanent injunction requiring the Secretary of the Treasury to: (1) vacate and remove any and all unlawful assessments shown on the Secretary's records of Plaintiff's 2020 taxable year and then inform Plaintiff in writing that this has been done; and (2) permanently refrain from making any assessments of deficiencies in respect of income tax against the Plaintiff except in compliance with the provisions of 26 U.S.C. § 6213.

### Fifth Cause of Action

### Declaratory judgment that the purported deficiency assessment for 2020 is invalid

### (against all Defendants)

42. Plaintiff realleges and incorporates herein all of the allegations of the preceding paragraphs.

43. The Declaratory Judgment Act states a declaratory judgment is generally not available "with respect to Federal taxes". 28 U.S.C. § 2201. However, the Declaratory Judgment Act must be read together with the exceptions contained within the Anti-Injunction Act, 26 U.S.C. § 7421(a), because it would be illogical to allow the court to enjoin the government but not allow the court to issue a declaratory judgment on the same subject matter.[9]

44. On or about February 17, 2025, the Plaintiff obtained an account transcript from the IRS in connection with Plaintiff's 2020 taxable year. The 2020 account transcript shows a purported assessment of $2,434 on November 27, 2023 with the description "Additional tax assessed". The account transcript also shows subsequent charges for interest and penalties in relation to the purported assessment dated November 27, 2023.

---

[9] *See, e.g., Tomlinson v. Smith*, 128 F.2d 808, 811 (7th Cir. 1942) ("It is unreasonable to think that a court with authority to issue a restraining order is without power to declare the rights of the parties in connection therewith."); *Cohen v. United States*, 397 U.S. App. D.C. 33, 46, 650 F.3d 717, 730 (2011) ("[A] functional concern exists with construing the [Declaratory Judgment Act's] exception to bar relief otherwise allowed under the [Anti-Injunction Act]. The court would have jurisdiction to enjoin the parties appearing before it, but not to declare their rights. This defies common sense[.]").

45. The purported assessment dated November 27, 2023 for Plaintiff's 2020 taxable year is invalid and unlawful because the government did not send Plaintiff a notice of deficiency prior to making the purported assessment. The statute authorizes the court to issue an injunction in these circumstances. *See* 26 U.S.C. § 6213(a).

46. An actual controversy exists as to whether the purported assessment of November 27, 2023 is valid and lawful, as evidenced by the fact that the government has already confiscated two years' worth of Plaintiff's tax refunds for 2023 and 2024, seemingly in reliance upon the purported assessment of November 27, 2023.[10] Unless a declaratory judgment is issued, the government is likely to continue to engage in illegal confiscations of Plaintiff's property in the future. Because Plaintiff has already suffered multiple illegal confiscations over a period of years, Plaintiff is entitled to a judicial resolution of this controversy. A declaratory judgment is warranted and appropriate to resolve the controversy.

47. The court should declare that the purported assessment dated November 27, 2023 shown on Plaintiff's 2020 tax account transcript, and all charges of penalties and interest in relation to that purported assessment, are unlawful and void and without any legal effect.

///
///
///
///
///
///
///
///

---

[10] The government's actions in this case have also had the effect of completely depriving Plaintiff of a pre-payment forum for judicial review because Tax Court jurisdiction does not exist unless and until the government mails a notice of deficiency. *See* 26 U.S.C. § 6213(a) (after a notice of deficiency is mailed, "the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency"). Notably, the filing fee for a Tax Court petition is only $60 (*see* 26 U.S.C. § 7451), compared to the $405 total fee required to open a case in this court. If the government had followed the proper procedure in this case, the dispute could have been resolved in a much faster and less expensive fashion.

**Prayer for Relief**

48. Plaintiff requests:

(a) A judgment of $3,262.98 plus interest against the United States and in favor of Plaintiff;

(b) A permanent injunction requiring the Secretary of the Treasury and all of his officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with any of them, to:

    (i) vacate and remove any and all unlawful assessments shown on the Secretary's records of Plaintiff's 2020 taxable year and then inform Plaintiff in writing that this has been done; and

    (ii) permanently refrain from making any assessments of deficiencies in respect of income tax against the Plaintiff except in compliance with the provisions of 26 U.S.C. § 6213.

(c) A declaratory judgment that the purported assessment dated November 27, 2023 shown on Plaintiff's 2020 tax account transcript, and all charges of penalties and interest in relation to that purported assessment, are unlawful and void and without any legal effect;

(d) Costs of suit; and

(e) Further or other relief that the court deems just.

49. <u>Demand for Jury Trial</u>. Plaintiff hereby demands a jury trial on all issues so triable.[11]

Dated: February 24, 2025

*Cathy Fitzpatrick*
Cathy J. Fitzpatrick
Plaintiff
Appearing in person

---

[11] *See* 28 U.S.C. § 2402 ("[A]ny action against the United States under section 1346(a)(1) shall, at the request of either party to such action, be tried by the court with a jury.").